OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Lewis, Appellant.
[Cite as State v. Lewis (1993),     Ohio St.3d     .]
Criminal law -- Aggravated murder -- Death penalty upheld, when.
    (No. 91-2417 -- Submitted June 3, 1993 -- Decided August 25, 1993.)
    Appeal from the Court of Appeals for Cuyahoga County, No. 59535.

In the early morning hours of August 17, 1989, Robert Howard was driving on Lakeview Avenue in Cleveland. Howard noticed a man lying on the street in a pool of dark red blood. He stopped his car, and saw that the man was dead. He called the police. He testified that when the medics picked up the body, "everything inside of his head came out." The victim was pronounced dead on arrival at a nearby hospital. The body had no identification, but police later determined the dead man was Clarence Roach, sixty-eight years old, whose wife had filed a missing person's report.

The deputy coroner testified that the victim's body had bruises and abrasions on the face, contusions of the eyelids, and hemorrhages in the whites of the eyes. The victim also had fractures of his nose, the bones under the eyes, both sides of the upper jaw, and a fracture of the base of the skull. There were contusions and lacerations of the lips, multiple loose teeth, and bruises at the back of the scalp. The neck was also fractured at the mid-level.

Internally, there was a fracture at the base of the victim's brain, causing a subarachnoid hemorrhage, which caused the brain to swell. The victim had also inhaled blood causing asphyxia due to the lack of air passing into his lungs. The coroner ruled the cause of death to be multiple blunt impacts to the head, with skeletal and visceral injuries. The coroner concluded Roach's death was a homicide.

Patrolman Nathaniel Summers was assigned to respond to the missing person's report of the victim's wife, Zelma Roach. Mrs. Roach told Summers the names of two men, Donald Lewis and Richard Parker, who she believed were the last people with her husband before he became missing. Summers telephoned appellant, who stated that the last time he saw Roach was after

they left a bar, when Roach dropped appellant off in the area of Lakeview and Superior Avenues.  Appellant told Summers that Roach said he had something else he had to do.  Summers telephoned the morgue and was told that it had a body that met Roach's description.  Mrs. Roach was taken to the morgue and shown clothing which she identified as belonging to her husband.

On August 21, the victim's car was found abandoned on East 117th and Gray Avenue.  A resident of the area, Gregory Witherspoon, testified that he saw a male, Richard Parker, and a second shorter male at the car.  The two males exited the car, opened the hood, and took out the car battery.  Witherspoon stated that the shorter male carried the battery across the park.

Richard Parker, a high school senior, testified that on the night of the incident he was walking home from his part-time job when appellant called him to come to the porch of Jackie Post's house.  Appellant and Roach were drinking when Parker arrived.  Eventually, Parker, appellant, and Roach went to a bar in Roach's car.  While in the car, the victim and appellant were discussing appellant's buying the victim's car.  Roach wanted $400 and appellant offered $200 now, and $200 later.  Parker stated that there were no arguments between appellant and Roach at the bar.

The trio left the bar around midnight, and Roach drove.  After a while, appellant stated he had to use the bathroom.  Roach stopped the car so appellant could relieve himself.  At that point, appellant told Roach to put the car in park.  Roach did not want to, but appellant reached into the car and put it into park himself.  Parker testified that they did not argue at all in the car, and when appellant got out of the car he pretended to urinate while winking at Parker.  When Roach refused appellant's request to place the car in park, the appellant grabbed Roach by the collar and pulled him from the vehicle.  According to Parker, appellant kicked Roach in the face and "stomped" the victim for approximately one and one-half minutes.

After the beating, Parker saw appellant take Roach's wallet.  After taking the wallet, appellant jumped in the car and started driving away.  Appellant found $10 in the wallet and threw the credit cards out of the car window.

While appellant was driving, Parker asked appellant why he beat the victim.  Appellant replied, "Fuck the punk.  He's probably dead anyway."  They went to a store and bought beer.  Parker said that he then walked home, arriving there about 2:00 a.m.

The next day, Parker and appellant went to Southgate Shopping Center in the victim's car.  Appellant drove.  Later that afternoon, they went back to the car, Parker opened the hood, and appellant took out the battery.  Appellant took the battery home and put it upstairs in his front hallway.

A few days later, while Parker was visiting appellant at his home, Roach's wife stopped by and asked appellant if he knew the whereabouts of her husband.  Parker testified that he (Parker) did not say anything, but he shook his head, indicating that he did not know where Roach was.  He testified that appellant told her that he had not seen Roach since Roach had dropped them off.

After Mrs. Roach left, appellant told Parker that if the police question him, tell them "the man dropped us off on Lakeview, and after he dropped us off on Lakeview, that was the last we seen of him." Parker testified that the first time the police questioned him, he told them the story appellant told him to say. Later, when he was arrested, Parker told the police the facts to which he later testified. He made a written statement on August 22, 1989, that was essentially the same as his testimony.

Parker also testified that, a few months before trial, appellant called him and told him to testify that appellant and Roach got into an argument in the bar and that Roach hit him under the eye. Parker testified that there was no argument in the bar, nor did Roach hit appellant.

Len Post testified that he had been friends with Roach for about twenty years. He testified that on the evening of August 16, Roach was at his house and had a drink of rum. Later, appellant and Parker came to the house and the three of them left together.

Gus Stassis, the owner of Club Illusion, testified that Roach, appellant, and Parker came to his bar the night of August 16, 1989. He served appellant and Roach each two doubles of rum. Roach paid for the drinks and bought some food for Parker. No argument occurred between appellant and Roach.

Detective Edward Gray testified that when he arrested appellant on August 22, 1989, appellant denied involvement in the murder. Appellant stated Roach dropped him and Parker off around midnight at Lakeview and Superior Avenues, and Roach drove away. Detective Bornfeld testified that appellant also told him the above story. Bornfeld later searched appellant's house and found the battery taken from Roach's car. When Bornfeld returned, he received a message that appellant had called and wanted to talk to him. In an August 23, 1989 statement, appellant admitted beating the victim and taking his wallet. Appellant also claimed that Parker was involved and had encouraged him to take the victim's wallet.

The jury convicted appellant of aggravated murder in violation of R.C. 2903.01, with a death penalty specification of aggravated robbery, and of aggravated robbery in violation of R.C. 2911.01. The trial court adopted the jury's recommendation of death and imposed the death sentence. The court of appeals affirmed the conviction and death penalty.

The cause is now before this court upon an appeal as of right.

Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, Melody A. White and Karen L. Johnson, Assistant Prosecuting Attorneys, for appellee.

Thomas S. Hudson and Donald S. Tittle, for appellant.

Francis E. Sweeney, Sr., J. Appellant has raised ten propositions of law. Each has been thoroughly reviewed and, for the reasons stated below, we find all to be without merit, and uphold appellant's conviction and death sentence.

I

Appellant alleges in his first proposition of law that the

trial court's jury instruction on specific intent was not adequate.

However, appellant failed to object to this instruction. Appellant's failure to object waives this issue on appeal absent plain error. State v. Thompson (1987), 33 Ohio St.3d 1, 13, 514 N.E.2d 407, 419.

A jury instruction must be viewed in the context of the overall charge rather than in isolation. State v. Price (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. While appellant cites only that portion of the charge labeled "specific intent," the court also instructed the jury as to the definitions of "purpose," "intent," and "causation." Therefore, we find that, when read in its entirety, the jury charge adequately defined specific intent. Further, we found a similar charge adequate in State v. Maurer (1984), 15 Ohio St.3d 239, 248, 15 OBR 379, 386-387, 473 N.E.2d 768, 778-779. Thus, we find no error in the court's charge. Accordingly, the first proposition of law is not well taken.

## II

Appellant argues in his second proposition of law that the trial court erred by failing to state its reasons for its finding that the aggravating circumstance outweighed the mitigating factors.

R.C. 2929.03(F) requires the trial court or three-judge panel to "state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.  * * *"

The trial court did not comply with the above statute because it did not state its reasons for finding that the aggravating circumstance outweighed the mitigating factors. Instead, the trial court merely concluded that the aggravating circumstance did outweigh the mitigating factors.

In a similar case, State v. Maurer, supra, the trial court also did not state its reasons for concluding that the aggravating circumstances outweighed the mitigating circumstances. We held that the appellant was not prejudiced because independent review of each stage of appeal can correct such omission. Id., 15 Ohio St.3d at 247, 15 OBR at 386, 473 N.E.2d at 778. Also, in State v. Johnston (1988), 39 Ohio St.3d 48, 57, 529 N.E.2d 898, 908, this court found harmless error in the trial court's failure to articulate the reasons for imposing the death penalty and what, if any, evidence it found to be mitigating. See, also, State v. Landrum (1990), 53 Ohio St.3d 107, 124, 559 N.E.2d 710, 729. Accordingly, this court's independent review will cure the omission of the trial court in failing to conform with the requirements of R.C. 2929.03(F).

## III

Appellant in his third proposition of law alleges the state failed to establish aggravated robbery because there is no evidence that the appellant intended to rob the victim at

the time the murder occurred.

From the undisputed facts and from appellant's own statement, we know that after he beat the victim, he then took the victim's wallet, car, and the car battery. Appellant argues that he intended only to beat the victim, and the taking of the wallet, the car, and the battery was an afterthought. As a result, he should have been convicted only of murder and theft.

This court discussed a similar issue in State v. Smith (1991), 61 Ohio St.3d 284, 574 N.E.2d 510. In Smith, the appellant argued that the victim of a stabbing was dead at the time the appellant took her property. This court held, "[a] robber cannot avoid the effect of the felony-murder rule by first killing a victim, watching her die, and then stealing her property after the death." Id. at 290, 574 N.E.2d at 516. See, also, State v. Cooey (1989), 46 Ohio St.3d 20, 23, 544 N.E.2d 895, 903.

In addition, appellant was asked if he planned to rob the victim. He answered, "Sort of. Right before we was getting out of the car I turned to Richard and said, 'Man, I'm getting tired of this old man, I feel like kicking his ass, talking that shit.' Richard said, 'Go ahead. I'm with you.' He like enticed me."

"* * * The relevant inquiry [in regard to determining the sufficiency of evidence on appeal] is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

In light of appellant's "sort of" response as to whether he intended to rob the victim, and the testimony of Parker, there is no evidence, other than the unsworn statement of appellant, that his purpose was anything other than to beat and rob the victim. A rational trier of fact could have easily found the establishment of aggravated robbery. Accordingly, this proposition is not well taken.

IV

Appellant in his fourth proposition of law alleges the trial court failed to explain to the jury the function of mitigating factors. However, appellant failed to object to the instructions and has thus waived all but plain error. Additionally, the trial court did explain the function of mitigating factors in its charge to the jury.

Appellant cites as authority Spivey v. Zant (C.A.5, 1981), 661 F.2d 464. In Spivey, the death sentence was reversed because the trial court's jury instruction focused almost exclusively on aggravating circumstances. Appellant also cites Finney v. Zant (C.A.11, 1983), 709 F.2d 643. In Finney, the trial court did not explain the function of mitigating factors. "Although the charge authorized the jury to consider circumstances in extenuation or mitigation, * * * the court failed to explain what function such a consideration would play in sentencing deliberations. An authorization to consider mitigating circumstances is a hollow instruction when unaccompanied by an explanation informing the jury why the law allows such a consideration and what effect a finding of

mitigating circumstances has on the ultimate recommendation of sentence."  Id. at 646-647.

A reading of the court's charge regarding considering mitigation factors shows the jury was instructed on the definition of "mitigating factors," the purpose of weighing mitigating factors against the aggravating circumstance, and hence the function of mitigating factors.  In addition, the court set forth the pertinent statutory mitigating factors. Accordingly, this proposition is not well taken.

                                    V

Appellant in his fifth proposition of law alleges that the underlying felony of aggravated robbery cannot also be used as an aggravating circumstance.

This court held in State v. Henderson (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph one of the syllabus: "Ohio's capital sentencing scheme does not violate the Ohio or United States Constitutions even if the aggravating circumstances for felony murder * * * are identical to the elements of aggravated murder * * *."  Accordingly, this proposition is not well taken.

                                   VI

Appellant in his sixth proposition of law states that he was denied his constitutional rights to effective assistance of counsel, an impartial jury and due process of law because R.C. 2929.03(C) requires the same jury at both the guilt and sentencing phases of trial.

The constitutionality of Ohio's death penalty scheme in total has been upheld by this court, State v. Jenkins, supra, and this particular argument has been rejected.  Id. at 173-174, 15 OBR at 319, 473 N.E.2d at 277, fn. 11. Accordingly, this proposition is not well taken.

                                  VII

Appellant in his seventh proposition of law states the prosecutor violated his right to remain silent and his right to a fair trial by commenting that appellant's statement was unsworn as opposed to the testimony of the other witnesses.

In State v. DePew (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, paragraph two of the syllabus, this court held that such prosecution comments are permissible when the comment is directed to the fact that, unlike other testimony, defendant's statement was not made under oath as long as the comment is limited to that issue.  Here, the comments were so limited. Accordingly, this proposition is not well taken.

                                 VIII

Appellant in his eighth proposition of law alleges that his right to a fair trial by an impartial jury was violated by an improper communication to the jury.

This proposition is based on an event that occurred during an adjournment during the guilt phase.  The victim's brother-in-law approached the second alternate juror, Laurel Barr, and stated, "Isn't this a really boring case?"  Barr stated she told the man "no" and began to use the phone.  Then he told her, "Because that's my brother-in-law that was killed."  Barr stated that she told several other jurors about the incident.

The trial court conducted a voir dire of all the jurors in an effort to determine whether the incident had affected their

ability to be fair and impartial.  All the jurors stated that the incident did not affect their ability to be fair and impartial.

In State v. Hipkins (1982), 69 Ohio St.2d 80, 83, 23 O.O.3d 123, 125, 430 N.E.2d 943, 945-946, this court held, "A new trial may be granted for the misconduct of the jury where the substantial rights of the defendant have been materially affected.  R.C. 2945.79(B); Weis v. State (1872), 22 Ohio St. 486.  * * *  Conversations by a third person with a juror during the progress of a trial for the purpose of influencing the verdict may invalidate the verdict, but where there is nothing in the record to demonstrate that the decision might have been influenced by such conversation, the refusal of the trial court to grant a new trial will not be disturbed.  State v. Higgins (1942), 70 Ohio App. 383 [23 O.O. 251, 41 N.E.2d 1022]."

Alternate juror Barr did not participate in the jury deliberations in the guilt phase or the penalty phase.  Appellant has not demonstrated how he was prejudiced by this contact with an alternate juror.  The trial court negated any showing of prejudice by interrogating this alternate juror and conducting a voir dire of the remaining jurors.  Accordingly, this proposition is not well taken.

IX

Appellant in his ninth proposition of law alleges that he was denied the effective assistance of counsel because defense counsel ordered a presentence report that included a pending, unproven charge.

Appellant claims he was deprived of his right to a fair trial by counsel's request for a presentence report.  Appellant alleges that his trial counsel were not aware that it was optional to request the report, and that they requested it without knowing the contents of the report.  Appellant cites the following statement by defense counsel in regard to the report:  "What we wanted to do--I don't plan to use it, period.  But what we had in mind was a social history when we asked for a presentence report * * *."  This issue was not raised below.  However, since trial counsel prosecuted the appeal to the court of appeals, and new appellate counsel brought the appeal to this court, we will entertain this proposition since it is unlikely trial counsel would have assigned as error ineffective assistance of counsel for requesting the report.

In State v. Hutton (1990), 53 Ohio St.3d 36, 559 N.E.2d 432, defense counsel requested the presentence report for undisclosed reasons.  The report listed unproven charges.  However, this court held, "an attorney might logically decide to take the chance that a [presentence report] may produce something he had missed, even at the risk of disclosing his client's criminal record.  Since the record does not rebut the presumption that counsel performed reasonably, we cannot hold that counsel's mere request for a [presentence report] was ineffective assistance."  Id. at 42, 559 N.E.2d at 441.

In the instant case, defense counsel stated his reason for requesting the report.  "[W]hat we had in mind was a social history when we asked for a presentence report * * *."  In Hutton, the court upheld the propriety of defense counsel's

request for a presentence report because the request could have been made for possible mitigation evidence. Here, from the comments of defense counsel, we can see that the reason for the request was to get a social history of appellant. This is a proper purpose, even if the report contains adverse information. Id.

Appellant also claims ineffective assistance of counsel for counsel's failure to further inquire of the jurors regarding the incident discussed in his eighth proposition of law, supra. Since the voir dire conducted by the trial court was adequate, defense counsel did not prejudice appellant. Accordingly, this proposition is not well taken.

X

Independent Review

Appellant argues in his tenth proposition of law that the aggravating circumstance does not outweigh the mitigating factors in this case. For the following reasons, we find the trial judge properly determined that the aggravating circumstance of aggravated robbery outweighs the mitigating evidence presented.

Pursuant to R.C. 2929.05(A), we must independently determine whether the aggravating circumstance outweighs any mitigating factors that have been established and whether the sentence of death is appropriate.

The aggravating circumstance in this case is the fact that appellant, as a principal offender, committed aggravated murder during the course of an aggravated robbery. See R.C. 2929.04(A)(7).

Of the statutory mitigation factors, the only possible one was R.C. 2929.04(B)(3), "[w]hether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law[.]" In regard to the R.C. 2929.04(B)(3) mitigating factor, several experts testified.

Defense witness Dr. Robert G. Kaplan, a clinical psychologist, concluded that appellant's alcoholism was a mental defect and he was "unable to conform his behavior to what was prescribed by the law under those circumstances." Kaplan also stated, "Mr. Lewis' intent to kill Mr. Roach occurred after just the sort of provocation to which he was psychologically susceptible." Kaplan explained that this statement meant "that he became furiously angry, that he became so angry that he couldn't control he [sic] behavior and wound up killing the man. * * *"

State's witness Dr. Magdi S. Rizk, a forensic psychiatrist, concluded that appellant did not suffer from any mental disease or defect; appellant had no history and no current symptoms of any mental disease or defect. Rizk also stated that alcoholism is not a mental disease, although appellant had problems with alcohol.

Other evidence introduced by appellant for mitigation purposes were his unsworn statement in which he stated that he only intended to beat Roach and the testimony of George Carlson, a counselor at a cocaine offenders' program, that appellant described himself as a loner who was deeply hurt by the early death of his father and who later lived with a

physically abusive stepfather.  Dr. Kathleen C. Dougherty, a psychiatrist, testified that appellant was in the moderate to severe range of drug and alcohol dependency and that on the day of the murder, he had consumed one-half bottle of rum and later, two doubles of rum.

Although alcohol played a role in the events, we do not find that appellant lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.  Even if we consider Dr. Kaplan's testimony as establishing the mitigating factor of R.C. 2929.04(B)(3), the nature and circumstances of appellant's brutal murder of an acquaintance based, in part, on an intent to rob the victim, clearly outweigh any mitigating factor beyond a reasonable doubt.

Our final task is to determine whether the sentence of death is appropriate in this case.  In carrying out this analysis, we find the sentence of death in this case is neither excessive nor disproportionate, but is appropriate, when compared with other felony-murder cases.  State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180; State v. Post (1987), 32 Ohio St.3d 380, 513 N.E.2d 754.

Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick and Pfeifer, JJ., concur.