[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Larry Williams, appeals from the denial of his petition for postconviction relief following an evidentiary hearing.
On May 31, 1991, appellant was convicted of three counts of aggravated robbery in violation of R.C. 2911.01 following a trial by jury. The trial court thereafter sentenced appellant to ten to twenty-five years in prison on the first two counts and five to twenty-five years in prison on the last count. The three sentences were ordered to run consecutively.
On appeal, this court affirmed appellant's convictions. SeeState v. Williams (Sept. 30, 1992), Trumbull App. No. 91-T-4564, unreported, 1992 Ohio App. LEXIS 5042. Appellant then unsuccessfully sought leave to appeal to the Supreme Court of Ohio. See State v. Williams (1993), 66 Ohio St.3d 1488 (overruling jurisdictional motion).
Subsequently, on June 28, 1996, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. In the petition, he alleged that there had been an infringement of his Sixth andFourteenth Amendment rights, thereby rendering the judgment against him void or voidable under the United States Constitution. Appellant relied on two grounds in requesting that the trial court set aside his aggravated robbery convictions: (1) misconduct of the jury; and (2) ineffective assistance of trial counsel.
The trial court granted appellant a hearing on his petition. The hearing was conducted on October 25, 1996. At this proceeding, appellant presented the testimony of his wife, Aberdean Johnson Williams ("Mrs. Williams"), and Arguster Rowe ("Rowe"),[1] a member of the jury from appellant's May 1991 trial. The state countered with the testimony of nine other members of the jury, two alternate jurors, the former assistant prosecuting attorney who handled the case, and two Trumbull County Sheriff's deputies.
Upon consideration of the evidence presented by the parties, the trial court denied appellant's petition by judgment entry on July 31, 1997. Included within the entry were findings of fact and conclusions of law as required by R.C. 2953.21(C) and (G). From this judgment, appellant filed a timely appeal with this court in which he asserts the following assignments of error:
 "[1.] The trial court abused its discretion and erred to the prejudice of defendant-appellant by denying his petition for post-conviction relief based upon jury misconduct, thereby further denying defendant-appellant his constitutionally protected right to a fair and impartial jury under Article 1, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution.
 "[2.] The trial court erred and abused its discretion in failing to allow Appellant to be present at the evidentiary hearing, depriving Appellant of his right to confront witnesses against him and to due process of law, guaranteed by the State and Federal Constitutions.
 "[3.] The trial court erred and abused its discretion by rendering factual findings which are unsupported by the record, depriving Appellant of due process of law as guaranteed by the State and Federal Constitutions.
 "[4.] The trial court erred and abused its discretion by engaging in improper questioning of Appellant's witness, depriving Appellant of a fair hearing and due process of law as guaranteed by the State and Federal Constitutions.
 "[5.] The judgment of the trial court is against the manifest weight of the evidence, denying Appellant due process of law as guaranteed by the State and Federal Constitutions.
 "[6.] The trial court erred and abused its discretion in failing to grant relief to Appellant based upon jury misconduct which occurred at trial, violating Appellant's right to a fair and impartial jury and to due process of law, as guaranteed by the State and Federal Constitutions.
 "[7.] The trial court erred and abused its discretion in failing to grant relief to Appellant based upon the ineffective assistance of counsel at trial, established in the lower court proceeding, which denied him the Sixth Amendment right to the effective assistance of counsel; depriving him of a fair hearing and due process of law as guaranteed by the State and Federal Constitutions."[2]
In his first assignment of error, appellant posits that the trial court erred by rejecting his claim of jury misconduct as a ground upon which to grant relief. Appellant contends that the probability of such misconduct was sufficiently established at the evidentiary hearing so as to warrant the vacating of his convictions.
The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" Beyond this, the United States Supreme Court has interpreted the Due Process Clause of theFourteenth Amendment as requiring that a defendant accused of a state criminal violation be tried before a panel of fair and impartial jurors. Duncan v. Louisiana (1968), 391 U.S. 145. See, also, Section 10, Article I, Ohio Constitution (establishing the right to "a speedy public trial by an impartial jury").
The verdict reached by a jury in a criminal trial must be based solely on the evidence and argument presented in open court.State v. Taylor (1991), 73 Ohio App.3d 827, 831, citing Pattersonv. Colorado (1907), 205 U.S. 454. Outside influences must not be allowed to affect the jury's decision.
The Supreme Court of Ohio has held that a new trial may be granted for the misconduct of the jury when the substantial rights of the defendant have been materially affected. State v. Lewis
(1993), 67 Ohio St.3d 200, 207; State v. Hipkins (1982), 69 Ohio St.2d 80,83. See, also, Crim.R. 33; R.C. 2945.79. Jury misconduct will not warrant a new trial in the absence of prejudice to the defendant. "It is a long-standing rule * * * that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." Statev. Kehn (1977), 50 Ohio St.2d 11, 19, citing Armleder v. Lieberman
(1877), 33 Ohio St. 77.
Therefore, the analysis of a claim of jury misconduct requires a two-step inquiry. First, there must have been misconduct by a juror. Second, if jury misconduct is found to exist, the court must determine whether such misconduct materially affected the substantial rights of the defendant. Taylor,73 Ohio App.3d at 833.
As indicated earlier, appellant presented the testimony of two witnesses in an effort to substantiate his claim of jury misconduct. The first such witness was his wife. Mrs. Williams testified that she attended every day of her husband's trial from May 29 through May 31, 1991. She, however, was not actually in the courtroom during the trial because she had been subpoenaed as a potential defense witness. As a result, she had to remain in the hallway outside of the courtroom due to a separation of witnesses. Despite this, Mrs. Williams claimed to have become familiar with the prosecutor, the victims, and the jurors by peeping into the courtroom through the doorway.
Mrs. Williams testified that she observed three female jurors seated on a bench in the hallway after the jury had been empaneled on May 29, 1991, but prior to the presentation of evidence. According to Mrs. Williams, she heard one of the jurors tell the other two that appellant must be found guilty. Mrs. Williams later identified Anna Calderas ("Calderas"), the forewoman of the jury, as the individual who made the statement. She also claimed that appellant had somehow heard Calderas make this comment as he was being escorted through the hallway by a deputy sheriff. Upon being informed about the incident, appellant's trial attorney allegedly said that no harm had been done and that appellant should tell it to the court of appeals if he was convicted.
In addition to this particular incident, Mrs. Williams claimed to have seen various jurors "mingling" with unidentified members of the prosecution team as they walked to lunch on the first day of trial. She, however, did not overhear any conversations between the jury members and prosecutors.
Mrs. Williams also testified regarding an incident that supposedly took place on May 30, 1991, the second day of trial. As the lunch break was ending, Mrs. Williams testified that she witnessed several victims, jurors, and Carol Sopkovich ("Sopkovich") enter an office on the second floor of the courthouse. Sopkovich was the assistant prosecutor handling the case for the state. According to Mrs. Williams, the group huddled in the office for five to seven minutes.
Appellant submitted his own affidavit with the petition for postconviction relief. In this affidavit, appellant attempted to corroborate his wife's account of this event:
 "On May 30, 1991, after being taken back to the Trumbull County Jail for lunch and being returned to the Trumbull County Courthouse, escorted by T.C. Deputy Sheriff Kirkwood, the second floor elevator opened, and as we stepped out in the hall, we (Deputy Kirkwood and I) observed several jurors and the Trumbull County Prosecutor, Carol Subkavitch [sic], coming out of an office across from the elvator [sic] (all together). I remarked to Deputy Kirkwood, `Look Kirkwood, that's illegal.' He stated, `Looks like it to me, looks like she screw [sic] this up.'"
At the evidentiary hearing, Rowe also testified as to an incident that was supposed to have taken place on May 30, 1991. As the jurors were walking from the courthouse to a nearby fast food restaurant, Rowe claimed to hear Calderas tell several other jurors that she was already convinced that appellant was guilty. Once at the restaurant, Rowe alleged that Calderas made a disparaging comment about blacks. He testified, "I heard that, the lady was saying that basically, `All blacks needs [sic] to be in prison,' and that we was [sic] all guilty of something or other." Rowe and appellant are both black.
Upon returning from this lunch, Rowe also claimed to have seen Sopkovich go into the second floor office with several members of the jury. After caucusing for a short period of time, the group exited the office, and the trial reconvened. Rowe testified to this effect and also averred to witnessing this incident in an affidavit that was appended to appellant's postconviction relief petition.
On cross-examination, Rowe admitted that he voted to convict appellant of the aggravated robbery charges, despite supposedly having misgivings as to whether appellant was really guilty. In addition, Rowe conceded that appellant sent him two letters from prison after the trial. Appellant expressed anger at being wrongfully convicted and imprisoned in one of these letters. Finally, Rowe admitted that Mrs. Williams had kept in contact with him following the trial, and it was she who requested that Rowe prepare the affidavit that was eventually submitted with appellant's petition for postconviction relief.
The state brought forth numerous witnesses to counter appellant's allegations of jury misconduct. Nine members of appellant's jury, including Calderas, and two alternate jurors testified on behalf of the state. All of them expressly denied having seen or participated in any of the scenarios described by Mrs. Williams and Rowe. Each of the jurors refuted the notion that he or she had discussed the facts of the case while the trial was in progress or determined appellant's guilt or innocence prior to the jury's deliberations. Calderas specifically denied making the statement attributed to her by Mrs. Williams in the hallway outside of the courtroom on May 29, 1991. She also unequivocally denied making the comments attributed to her by Rowe at the fast food restaurant on May 30, 1991.
Furthermore, none of the jurors or alternates recalled ever seeing Sopkovich huddle with members of the jury in an office on the second floor of the courthouse. Sopkovich also testified at the hearing. She denied not only meeting with jurors in the office on May 30, 1991, but also denied having personal contact with any member of the jury once the trial had commenced.
Deputies Ronald Kirkwood and Darby Vaughn of the Trumbull County Sheriff's Department were also called as witnesses by the state. They were responsible for escorting appellant to and from the courthouse during the course of his trial. Neither witnessed any misconduct by a member of the jury. Deputy Kirkwood specifically denied the claim contained in appellant's affidavit, to wit: that the deputy witnessed several jurors and Sopkovich exit the second floor office on May 30, 1991 as he escorted appellant off the elevator.
In an evidentiary hearing on a petition for postconviction relief, the trial court serves as the trier of fact. It is well-established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, in the case sub judice, the trial court was charged with the ultimate responsibility for determining the weight of the evidence and the credibility of the witnesses.
At the conclusion of the hearing, the trial court found no credible evidence whatsoever of any jury misconduct. In its judgment entry, the trial court addressed each incident of jury misconduct that was alleged to have taken place by Mrs. Williams and Rowe.
Regarding the alleged hallway conversation of May 29, 1991, the trial court noted that "the eleven jurors called by the State all denied having seen or heard anything even remotely resembling the scenario posed by Mrs. Williams." The trial court found the testimony of the state's witnesses to be "far more credible and believable than the accounts given by [appellant] and Mrs. Williams, whose interest and bias in the outcome of this matter is obvious."
As for the comments allegedly made by Calderas while at lunch on May 30, 1991, the trial court found Rowe's testimony to be sorely lacking in credibility. The trial court concluded that the testimony of the other jurors who were at lunch on the day in question was far more believable, while "Mr. Rowe's testimony may have been improperly motivated by either sympathy for, or pressure from" appellant.
Finally, in relation to the alleged meeting between Sopkovich and jurors in the second floor office after the lunch break on May 30, 1991, the trial court again found appellant's evidence to be untrustworthy. The trial court noted that "Sopkovich denied having ever had any discussions with any jurors at any point after voir dire[.]" Furthermore, the eleven jurors called to testify by the state denied participating in or having knowledge of such a meeting with the prosecutor.
When reviewing a trial court's denial of a postconviction relief petition, an appellate court will not reverse the decision in the absence of an abuse of discretion. State v. Lundgren (June 26, 1998), Lake App. No. 97-L-196, unreported, at 11, 1998 Ohio App. LEXIS 2926; State v. Allen (Sept. 23, 1994), Lake App. No. 93-L-123, unreported, at 3, 1994 Ohio App. LEXIS 4274. An abuse of discretion connotes more than simply an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Montgomery
(1991), 61 Ohio St.3d 410, 413.
We perceive no such abuse of discretion in the instant matter. The trial court functioned as the trier of fact at the hearing. After listening to the testimony and considering the affidavits submitted with appellant's petition, the trial court found absolutely no credible evidence of jury misconduct. We agree with this conclusion. Appellant's first assignment is not well-taken.
In his second assignment of error, appellant proposes that the trial court erred by failing to allow him to be present at the evidentiary hearing that was held on October 25, 1996. According to appellant, the record does not reflect that he attended the proceeding, thereby requiring reversal of the trial court's judgment and remand for a new evidentiary hearing at which appellant is present.
Initially, we note that the record is silent as to whether or not appellant attended the hearing on his petition for postconviction relief. The transcript simply demonstrates that appellant did not testify as a witness on his own behalf. Further, the trial court's judgment entry reflects only that appellant was represented by counsel at the hearing; it does not speak expressly to appellant's presence or absence from the proceeding. We will assume for the sake of argument that appellant did not attend the hearing.
A postconviction relief petitioner does have a statutory right to attend the hearing if one is granted. R.C. 2953.22 provides in part:
 "If a hearing is granted pursuant to section 2953. 21 of the Revised Code, the petitioner shall be permitted to attend the hearing. Testimony of the prisoner or other witnesses may be offered by deposition.
 "If the petitioner is in a state correctional institution, he may be returned for the hearing upon the warrant of the court of common pleas of the county where the hearing is to be held. * * * The warrant shall be directed to the sheriff of the county in which the hearing is to be held. When a copy of the warrant is presented to the warden or other head of a state correctional institution, he shall deliver the convict to the sheriff, who shall convey him to the county. * * *" (Emphasis added.)
At least one appellate court has interpreted R.C. 2953.22 as simply giving the trial court the discretion to cause an imprisoned petitioner to be present at an evidentiary hearing. See State v. Rodano (July 12, 1990), Cuyahoga App. No. 57185, unreported, at 4, 1990 Ohio App. LEXIS 2857; State v. Rodano (June 21, 1990), Cuyahoga App. No. 57184, unreported, at 2, 1990 Ohio App. LEXIS 2520. We, however, do not agree with this reading of the statute.
The plain language of R.C. 2953.22 clearly states that if the trial court grants a petitioner an evidentiary hearing under R.C.2953.21, the petitioner "shall be permitted to attend the hearing." See State v. Rawlins (July 16, 1980), Hancock App. No. 5-79-29, unreported, at 4-5, 1980 Ohio App. LEXIS 10804 (holding that the trial court erred by not exercising its authority under R.C. 2953.22 to transport a postconviction petitioner from prison for an evidentiary hearing). The use of the word "shall" does not lend itself to an interpretation by which the trial court has unfettered discretion in deciding whether the petitioner should be returned from the penitentiary for the purpose of attending the hearing.
Although the petitioner has a statutory right to attend the hearing, R.C. 2953.22 does not mandate that he or she must be present in order for the hearing to go forward. From this, we conclude that R.C. 2953.22 establishes a right of attendance, but it is incumbent upon the petitioner to take steps to further the exercise of that right.
This interpretation of R.C. 2953.22 is consistent with the basic proposition that parties to a civil action are not required to be in attendance in order for the action to proceed. More specifically, a prisoner has no constitutional right to be personally present at civil proceedings which he or she has instituted. See, generally, Jordan v. Ivanchak (Dec. 15, 1989), Trumbull App. No. 88-T-4102, unreported, at 7, 1989 Ohio App. LEXIS 4713.
It is well-established that "an action for postconviction relief is a civil proceeding, in which the prosecuting attorney represents the state as a party." (Emphasis added.) State v.Milanovich (1975), 42 Ohio St.2d 46, 49; see, also, State v. Bush
(Feb. 6, 1998), Trumbull App. No. 97-T-0035, unreported, at 4, 1998 Ohio App. LEXIS 427. The fact that postconviction proceedings are civil in nature supports our interpretation of R.C. 2953.22 as establishing a statutory right to attend the hearing which is subject to being waived if the petitioner does not take some proactive measure to invoke that right.
Turning to the case at hand, we not do not believe that the trial court committed error even assuming arguendo that appellant was not at the hearing. There is absolutely nothing in the record to suggest that appellant took any steps to exercise his right to attend the hearing under R.C. 2953.22.
There is no motion requesting that the trial court issue a warrant to the county sheriff directing the sheriff to convey appellant from the state correctional institution to Trumbull County for the hearing. Moreover, a review of appellant's petition for postconviction relief reveals that he requested an evidentiary hearing, but no mention was made in the petition of appellant's desire to attend the proceeding if one was granted. Finally, the transcript of the October 25, 1996 hearing demonstrates that counsel for appellant did not lodge any sort of objection to his client's absence from the proceeding.
In light of this, it can not be said that the trial court denied appellant the opportunity to be present at the hearing. The record does not reflect that appellant ever invoked his right to attend under R.C. 2953.22. Appellant's second assignment lacks merit.
Under his third assignment of error, appellant suggests that the trial court erred by rendering factual findings which were unsupported by the record. Appellant then points to various factual findings made by the trial court as being contradicted by the evidence introduced at the hearing.
We need not address each of the trial court's statements in the judgment entry with which appellant takes issue. It is enough to say that a reviewing court will not disturb the trial court's factual findings if they are supported by competent, credible evidence. In the instant case, we have reviewed the trial court's findings of fact and determined that they are supported by such evidence. Appellant's third assignment is not well-taken.
In his fourth assignment of error, appellant contends that the trial court abused its discretion by engaging in improper questioning of a witness. Specifically, appellant claims that the trial court undertook a repetitive interrogation of Mrs. Williams which exceeded the bounds of judicial discretion.
A trial court has inherent power to interrogate witnesses brought before it. This power has been codified in the Ohio Rules of Evidence. Evid.R. 614 reads in part:
 "(B)Interrogation by Court. The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party.
 "(C)Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."
In the case at hand, the trial court did question Mrs. Williams after she had been through direct examination by appellant's counsel and cross-examination by the state. The trial court asked Mrs. Williams a number of questions in an effort to clarify her account of the conversation she claimed to have overheard on May 29, 1991 in which Calderas allegedly told two other female jurors that appellant must be found guilty. Appellant proposes that this examination by the trial court merely revisited testimony already given by Mrs. Williams and amounted to the unfair badgering of a witness.
At the outset, we would note that counsel for appellant did not object to the trial court's questioning of Mrs. Williams. The failure to object generally constitutes a waiver of any error on appeal. State v. Lewis (1993), 67 Ohio St.3d 200, 203; State v.Thompson (1987), 33 Ohio St.3d 1, 13. Despite this, we will briefly address this assigned error.
The right to question witnesses pursuant to Evid.R. 614(B) rests within the sound discretion of the trial court. State v.Prokos (1993), 91 Ohio App.3d 39, 44. Thus, the standard of review on appeal is whether the trial court abused its discretion in eliciting responses from a witness. State v. Davis (1992),79 Ohio App.3d 450, 454. As stated earlier, a trial court abuses its discretion when it exhibits an unreasonable, arbitrary, or unconscionable attitude. State v. Adams (1980), 62 Ohio St.2d 151,157.
This court has previously endorsed the following view of the trial court's role in questioning a witness:
 "`Evid.R. 614(B) permits a trial judge to interrogate a witness as long as the questions are relevant and do not suggest a bias for one side or the other. * * * Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain a material fact or develop the truth. * * * A trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant.'" (Citations omitted.) Mentor v. Brancatelli (Dec. 5, 1997) Lake App. No. 97-L-011, unreported, at 5-6, 1997 Ohio App. LEXIS 5439, quoting State v. Blankenship (1995), 102 Ohio App.3d 534, 548.
In the case sub judice, our review of the transcript indicates that the trial court's questioning was not improper in any respect. It was not biased, but rather was an impartial examination of Mrs. Williams. To the extent that the trial court revisited testimony previously given by Mrs. Williams on direct and cross-examination, it was obvious the trial court simply wanted to clarify exactly what she claimed to have witnessed in the hallway outside of the courtroom on the first day of trial. As such, the trial court was not badgering her.
The trial court interrogated Mrs. Williams in an attempt to ascertain material facts in a search for the truth about an alleged incident of jury misconduct. The examination was entirely proper under Evid.R. 614(B), and the trial court acted within its discretion. Appellant's fourth assignment is without merit.
Under his fifth assignment of error, appellant postulates that the judgment of the trial court was against the manifest weight of the evidence. Appellant argues that it was not rational for the trial court to deny him relief in light of the evidence of jury misconduct that had been presented at the hearing.
In our analysis of the first assignment, we agreed with the trial court's conclusion that there was absolutely no credible evidence of jury misconduct. The testimony of both Mrs. Williams and Rowe was totally unbelievable. Given this, it is obvious that the trial court's judgment was consistent with, not counter to, the weight of the evidence. Appellant's fifth assignment is not well-taken.
Appellant's sixth assignment states that the trial court erred in failing to grant him relief based upon the misconduct certain jurors. This assertion is identical to the first assignment, which we held to be unfounded. Consequently, the sixth assignment is also meritless.
Finally, in his seventh assignment of error, appellant takes the position that the trial court erred by failing to grant him relief based upon the ineffective assistance of trial counsel. The effective assistance of counsel is guaranteed by theSixth Amendment to the United States Constitution.
In order to demonstrate ineffective assistance of trial counsel, a criminal defendant must satisfy a two-part test as formulated by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was deficient in that the representation fell below an objective standard of reasonableness.Strickland, 466 U.S. at 687-688. Second, it must be shown that counsel's deficient performance prejudiced the defendant. Id. at 687. In this context, prejudice means that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.
The Supreme Court of Ohio has endorsed the Strickland test for determining the issue of ineffective assistance of counsel. SeeState v. Bradley (1989), 42 Ohio St.3d 136, 141-142. This court has likewise embraced the Strickland standard. See, e.g., Statev. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 20-21, 1998 Ohio App. LEXIS 2289.
According to appellant, the evidence adduced at the hearing established that he and his wife brought several instances of jury misconduct to the attention of his trial counsel. This attorney allegedly said that no harm was done and that appellant should save his claims of jury misconduct for appeal if he was convicted. From this, appellant maintains that the failure of counsel to alert the trial court of the misconduct constituted deficient performance which prejudiced his right to a fair trial.
In its judgment entry, the trial court dismissed appellant's claim of ineffective assistance by observing that since "there was no credible evidence of juror misconduct, [appellant's] counsel obviously cannot be found to have been ineffective for failing to apprise the trial court of something which did not exist." We agree. Appellant did not present credible evidence that his counsel's performance was deficient as required under the first prong of the Strickland test. Thus, his claim of ineffective assistance fails for this reason alone. Appellant's seventh assignment is not well-taken.
Based on the foregoing analysis, appellant's assignments of error are without merit. Accordingly, the judgment of the trial court is affirmed. ___________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., concurs with Concurring Opinion,
NADER, J., concurs.
[1] The trial court's judgment entry and the transcript both refer to this individual as "Auguster." However, appellant submitted an affidavit from Rowe with the petition for postconviction relief. In this affidavit signed personally by Rowe, his first name is spelled "Arguster."
[2] The first assignment was included in a brief written by appellant's counsel. The latter six errors were contained in apro se brief submitted by appellant. They have been renumbered accordingly.