OPINION
{¶ 1} This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Pro se appellant, Kenneth N. Jaryga, appeals from his conviction for abduction, a felony in the third degree, in violation of R.C. 2905.02. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On May 28, 1999, appellant was indicted by the Lake County Grand Jury on the following charges: (1) one count of gross sexual imposition, a felony in the fourth degree, in violation of R.C. 2907.05; (2) one count of abduction, a felony in the third degree, in violation of R.C. 2905.02; and (3) one count of receiving stolen property, a misdemeanor in the first degree, in violation of R.C. 2913.51.
 {¶ 3} Appellant posted a $3,000 recognizance bond on April 19, 1999. Appellant waived his right to be present at his arraignment and entered a plea of not guilty to the charges contained within the indictment on June 10, 1999.
 {¶ 4} On August 13, 1999, appellant filed a motion to suppress certain evidence. The trial court held a suppression hearing on September 9, 1999, and the trial court overruled the motion in a judgment entry dated September 6, 1999.
 {¶ 5} The matter proceeded to a two-day jury trial on October 4, 1999, at which time the trial court dismissed the receiving stolen property charge upon the state's motion. The prosecution called several witnesses to the stand, including the victim. At the close of the state's case, the defense moved for a judgment of acquittal pursuant to Crim. R. 29. This motion was overruled, and the proceedings continued. The defense presented two witnesses, appellant and his wife. Following the presentation of all evidence, defense counsel again made an unsuccessful Crim. R. 29 motion.
 {¶ 6} On October 6, 1999, a jury found appellant guilty of gross sexual imposition and abduction as charged in the indictment. The trial court referred the matter to the adult probation department for a presentence report, victim impact statement, drug and alcohol evaluation, and sexual predator psychological evaluation. Bond was continued on the condition that appellant have no contact with the victim.
 {¶ 7} On November 17, 1999, the trial court held the mandatory sexual predator hearing pursuant to R.C. 2950.09. The trial court found appellant to be a sexually oriented offender and notified him of his duty to register with the appropriate law enforcement officials. The trial court then proceeded to the sentencing phase of the hearing. The trial court sentenced appellant to serve one year of imprisonment for his conviction for gross sexual imposition and three years of imprisonment for his conviction for abduction. These sentences were to be served concurrently. The trial court also denied appellant's motion for bond pending appeal. Bond was released, and appellant was conveyed to the Lorain Correctional Institution.
 {¶ 8} From that judgment, appellant filed his first appeal with this court. In that appeal, appellant asserted six assignments of error, challenging his convictions for gross sexual imposition and abduction. This court found merit only in appellant's fourth assignment of error, to wit: that the trial court erred in failing to instruct the jury on unlawful restraint as a lesser included offense of abduction, thereby necessitating the reversal of appellant's conviction for the latter offense.
 {¶ 9} Specifically, we concluded that the "jury should have been instructed on the lesser included offense because a question was raised with respect to whether or not [the victim] was put in fear, and as to the use of force. * * * [T]he evidence presented [was] such that a jury could both reasonably acquit appellant of abduction, while at the same time convict him of the unlawful restraint." State v. Jaryga, 11th Dist. No. 99-L-179,2001-Ohio-7065, 2001 Ohio App. LEXIS 6002, at 29. However, we found no merit in appellant's remaining assignments of error. As a result, we affirmed appellant's conviction for gross sexual imposition but reversed his conviction for abduction and remanded the matter to the trial court for further proceedings. Id. at 39.
 {¶ 10} The trial court re-set appellant's bond at $3,000. Appellant paid this amount and was released from prison on approximately January 16, 2002.
 {¶ 11} On remand, the matter proceeded to a jury trial on November 21 and 22, 2002. The state called a number of witnesses to testify, including the victim and the investigating police officers. At the close of the state's case, the defense failed to move for an acquittal pursuant to Crim. R. 29. The defense then presented several witnesses, including appellant and his wife. Following the presentation of all evidence, the defense again failed to make a Crim. R. 29 motion with respect to the abduction charge.
 {¶ 12} Testimony from the various witnesses revealed the following relevant facts. Appellant worked for an insurance rebuilding contractor called Homecrafters, located in Willoughby, Ohio. On March 20, 1999, appellant ran some errands in the morning and then drove to Homecrafters in a truck belonging to his employer. Once at work, appellant began to drink a bottle of gin that he had brought with him from home. During the course of the afternoon, appellant drank at least half the bottle, resulting in a buzz. By mid-afternoon, appellant left his workplace and purchased gasoline at a BP station at the intersection of State Routes 2 and 615 in Mentor, Ohio.
 {¶ 13} Appellant then proceeded to a Big Lots store located at a nearby shopping plaza. Appellant began to walk around the store and spotted the victim in the furniture department. The victim and her nine-year-old daughter came to Big Lots to purchase some perfume and to look at a couch for their home. The victim spoke to a saleswoman in the furniture department, and a manager of the department noticed appellant standing on the perimeter of the department looking at the victim as she spoke with the saleswoman. The furniture department was adjacent to the women's underwear department.
 {¶ 14} The victim and her daughter finished looking at the couch, purchased a bottle of perfume at the front of the store, and exited the store. In the parking lot, the victim and her daughter walked toward their car. At this time, the victim noticed that appellant was following them and walking briskly to keep up with them.
 {¶ 15} When the victim reached her car, she took out the keys and began to unlock her door. She testified that, as she did so, appellant came up immediately behind her and pushed his body against hers so that she was against her car. According to the victim, appellant grabbed her right buttock as he pushed his body against her. The victim testified that appellant stated that she had a "nice ass" which looked good and "firm." The victim then yelled and told appellant to get away from her.
 {¶ 16} At this time, two unidentified males were walking nearby in the parking lot. They apparently heard the victim scream and approached and asked if everything was okay. At that point, appellant stepped away from the victim's vehicle and began walking away to another part of the parking lot. Appellant got into his company truck and began to leave the parking lot.
 {¶ 17} The victim then got into her own vehicle and followed appellant as he left the shopping center. During this time, the victim was able to write down the license plate number of the truck appellant was driving. She then immediately pulled into a nearby BP station located at the intersection of State Routes 2 and 615, where she called the police. Laurie Ann Amato ("Amato"), a BP service station employee, helped the victim call the police.
 {¶ 18} Shortly thereafter, Officer Timothy Baker ("Officer Baker") of the Mentor Police Department arrived at the service station and asked the victim to give a written statement concerning what had occurred. In addition to the statement, the victim also provided Officer Baker with a description of both appellant and the truck he was driving.
 {¶ 19} After speaking with the victim, Officer Baker then proceeded to Big Lots where he questioned several of the employees. Later in the afternoon, Officer Baker learned that the truck appellant was driving was registered in the name of Rodney Dennison ("Dennison"). Dennison confirmed that he owned the truck in question, but he stated that appellant, who was employed by Dennison's company, had the truck in his possession. Dennison then gave Officer Baker a physical description of appellant, and this matched the description provided by the victim.
 {¶ 20} The encounter between the victim and appellant took place sometime between 3:00 p.m. and 3:30 p.m. Thereafter, appellant continued driving around Lake County in the Homecrafters company truck. Specifically, appellant stated that he went to a furniture store in Painesville and several other stores before returning to Big Lots in Mentor.
 {¶ 21} Around 8:00 p.m., Officer Baker received a report concerning an intoxicated male at Big Lots in Mentor, and he and another officer responded to the scene. Once there, Officer Baker saw the truck appellant had been driving earlier in the day. He then observed appellant leaning against the front of the Big Lots building. When the officers approached appellant and engaged him in conversation, Officer Baker noticed that appellant's clothing was disheveled, he was having trouble lighting a cigarette, his speech was slurred, and he smelled of alcohol.
 {¶ 22} From his observations, Officer Baker determined that appellant was intoxicated and placed him under arrest for disorderly conduct. Appellant was read his rights and placed in the back of a patrol car. The officer who had accompanied Officer Baker conducted a search of appellant's truck, and he seized several items of ladies' underwear which were found in plain view. A subsequent search of the truck revealed thirteen pairs of women's panties and one bra, all with Big Lots price tags still attached. The items were not in a bag, and no receipt was found inside the vehicle. A Big Lots store manager confirmed that these items were Big Lots merchandise.
 {¶ 23} Officer Baker subsequently transported appellant to the police station. The booking report indicated that appellant was in possession of two pairs of women's underwear. During appellant's interview, he admitted to being at Big Lots several times that day. Moreover, appellant also told the officer that he had spoken to a lady in the parking lot and that he may have told her she looked nice. However, he denied ever grabbing her in any way. Appellant admitted that he did not have receipts for the Big Lots merchandise found in the truck.
 {¶ 24} Appellant's version of events differed from the victim's version. Appellant stated that while walking to his car, he came upon a woman getting into her vehicle. Because there was another automobile parked beside the car, appellant testified that he asked her if he could get by. According to appellant, the woman never responded to his question so he asked once again. In response, appellant told the jury that the woman allegedly made an unintelligible remark to him that contained swearing. Determined that the woman was not going to cooperate, appellant decided to squeeze between the other vehicle and the car door. While he was in the process of doing so, appellant testified that the woman told him, "[y]ou can't touch my ass." It was at this time that the two unidentified men approached and asked if everything was okay. Shortly thereafter, appellant went on his way.
 {¶ 25} On November 22, 2002, the jury found appellant guilty of abduction. The trial court recorded the guilty verdict and referred the matter to the adult probation department for the preparation of an updated presentence investigation report.
 {¶ 26} The matter proceeded to a sentencing hearing on January 8, 2003. The trial court sentenced appellant to three years of community control for the abduction conviction. As part of this sentence, the trial court ordered appellant to serve thirty-five days in the Lake County Jail. Upon completion of the jail sentence, appellant was ordered to attend an outpatient program at the Lake Geauga Center for Alcohol and Drug Abuse, attend mental health counseling and Alcoholics Anonymous meetings weekly, have no involvement with drugs or alcohol, and submit to random drug and alcohol testing. Appellant's bond was released, and he was ordered to report to the Lake County Jail on January 9, 2003.[1]
 {¶ 27} From this judgment, appellant filed the instant appeal and sets forth the following assignments of error:
 {¶ 28} "[1.] The trial court erred when it instructed the jury that it could not consider the lesser included offense until after the jury had found the defendant guilty of the greater offense.
 {¶ 29} "[2.] The trial court erred when it barred the admission of the alleged victim's prior longstanding psychiatric illness and authenticated medical records for rebuttal and to question the alleged victim's `state of mind' at the time of the alleged crime.
 {¶ 30} "[3.] The trial court erred when it deprived defendant of the effective assistance of counsel when it limited/cut off defense counsel's closing argument.
 {¶ 31} "[4.] The trial court erred when it refused defendant's motion to declare a mistrial, where juror misconduct tainted the jury by lending credence to and tacitly affirming testimony of alleged victim.
 {¶ 32} "[5.] The trial court erred when it increased defendant-appellant's sentence after a successful appeal, retrial and subsequent re-conviction.
 {¶ 33} "[6.] The trial court erred when by denying defendant-appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure because defendant-appellant's conviction was not based upon sufficient evidence in [sic] the alternative defendant-appellant's conviction was against the manifest weight of the evidence."
 {¶ 34} In appellant's first assignment of error, he contends that the trial court improperly instructed the jury regarding the lesser included offense of unlawful restraint as it applied to the charge of abduction. Specifically, appellant argues that the trial court erroneously instructed the jury that it had to unanimously find appellant not guilty of the greater offense of abduction before ever considering the elements of the lesser included offense of unlawful restraint. We disagree.
 {¶ 35} In State v. Thomas (1988), 40 Ohio St.3d 213, paragraph three of the syllabus, the Supreme Court of Ohio set forth a test to determine the propriety of jury instructions in regard to lesser included offenses. "A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense." Id. at paragraph three of the syllabus.
 {¶ 36} In the instant matter, the trial court instructed the jury as follows:
 {¶ 37} "Now I, again I also advise you that this case involves a charge of Abduction and that is the only charge in the case. Any discussion, testimony or evidence that has been presented relative to any other charges may not be considered by you in your deliberations. * * * Now ladies and gentlemen, there is in this case what is called a lesser included offense and this lesser included offense is not given to you to give you a choice nor to make your job easier you must consider all of the elements that the State claims that it prove in the charge of abduction and if you find the defendant guilty of abduction you will not proceed to the lesser included offense. However if you find the defendant not guilty of the charge of abduction then you will determine whether or not the defendant is guilty of unlawful restraint. * * * This being a criminal case your verdict must be unanimous so that means that all 12 persons must agree in your verdict. Whatever the verdict all 12 must concur. Upon making the concurrence you will date the form and each of you will sign the form above where your name is typewritten."
 {¶ 38} In the instant matter, the trial court did not specifically include language addressing a deadlock scenario in its charge to the jury. At the close of instructions, the trial court asked counsel for both parties whether there was anything further upon which to instruct the jury. At that time, defense counsel approached the bench and brought the deadlock scenario to the attention of the trial court. Defense counsel essentially complained that the court did not state that, if the jury was unable to reach a unanimous verdict regarding the charge of abduction, the jury was permitted to then consider the lesser included charge. Defense counsel and the trial court then discussed the matter. Defense counsel then stated, "it's my understanding we've reviewed OJI 421.01 and [my co-counsel] feels the Court's instruction is sufficient on lesser included and I am fine with this." The co-counsel affirmatively stated, "I have no problem with the way you charged."
 {¶ 39} It is apparent that defense counsel did not believe the jury would be confused about how it was to address the offenses of abduction and unlawful restraint. Accordingly, appellant waived all but plain error with respect to this particular issue. Crim. R. 52(B); State v. Robb,88 Ohio St.3d 59, 86, 2000-Ohio-275, citing State v. Wade (1978),53 Ohio St.2d 182, paragraph one of the syllabus. Plain error is an obvious error or defect in the trial proceedings which affects a substantial right. Crim. R. 52. In a criminal matter, a reviewing court should only invoke the plain error doctrine under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Jenks (1991), 61 Ohio St.3d 259. Plain error does not exist unless, but for the error, the outcome of the trial would have been different. Id. at 282.
 {¶ 40} There exists no plain error in the instant matter. This is demonstrated by the fact that the jury found appellant guilty of abduction unanimously, by a vote of twelve to zero. Because the jury found appellant guilty of the greater offense, the jury never considered the lesser included offense of unlawful restraint. The jury had no opportunity to become confused as to the procedure to be employed when considering the respective offenses of abduction and unlawful restraint. The absence of plain error is further demonstrated by the fact that the jury never sent out a note indicating that it was deadlocked on the greater offense of abduction, and the jury never asked the trial court for guidance on the proper procedure to follow.
 {¶ 41} Accordingly, the trial court's instructions regarding the lesser included offense were proper. Moreover, appellant waived this issue for appeal, and there exists no plain error. Appellant's first assignment of error is not well-taken.
 {¶ 42} In appellant's second assignment of error, he argues that the trial court erred by barring the admission of two pages of medical records pertaining to the victim. Specifically, appellant contends that the trial court erred by refusing to admit authenticated psychiatric records of the victim that were provided to appellant during discovery in a civil matter related to this instant matter. We disagree.
 {¶ 43} Appellant attempted to admit a two-page document, Exhibit K, which included a report detailing an August 5, 1998 psychiatric evaluation of the victim by Dr. Ilze Schwartz ("Dr. Schwartz"). According to the report, the victim was referred to Dr. Schwartz because she "cannot handle" her oldest daughter and was "having marital problems because of the oldest daughter." During the evaluation by Dr. Schwartz, the victim reported that she and her husband were "on the verge of separation because of conflicts with the children." Dr. Schwartz reported that the victim was "a friendly, cooperative, anxious and depressed young woman who gives a 3-4 month history of insomnia, nervousness, crying spells and weight loss. She feels overwhelmed by the problems with her children and her marital problems. * * * Thereis no evidence of a thought disorder." Dr. Schwartz diagnosed the victim with major depression and prescribed medication to help her sleep.
 {¶ 44} The documents also include hand-written patient notes by Dr. Schwartz which detail the victim's follow-up visit on September 30, 1998. At that time, Dr. Schwartz reported that the victim was sleeping well and her appetitive had improved. She noted that the victim continued to feel nervous and "has crying spells." Dr. Schwartz continued the victim's regimen of sleep medication and also added a medication to treat depression.
 {¶ 45} The record seems to indicate that, at some point prior to trial, the trial court indicated that this document would be admissible. However, at trial, the court reversed its prior ruling. The trial court stated, "[t]here is no other substantive evidence to indicate what her history is and the Court feels that it's inappropriate to delve into the psychological history where that's not an issue in this case."
 {¶ 46} Defense counsel proffered that the document was admissible for two reasons. First, defense counsel contended that the document was admissible for rebuttal because it indicates the existence of marital problems which the victim denied in her testimony. According to defense counsel, this would establish the victim's "predisposition for untruthfulness and/or confusion about reality in general," which was of direct relevance to her credibility. Defense counsel also argued that the records would have established the victim's predisposition for crying and could demonstrate that the victim's fear was unreasonable. Despite the proffer of defense counsel, the trial court refused to admit the documents. The record is unclear as to whether the trial court viewed the proposed Exhibit K in camera prior to this ruling.[2]
 {¶ 47} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. It is axiomatic that the "admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus; Statev. Comstock (Aug. 15, 1997), 11th Dist. No 96-A-0058,1997 Ohio App. LEXIS 3670, at 28. In other words, "[t]he issue of whether [evidence] is relevant or irrelevant * * * is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 164. Moreover, "the question of whether evidence is relevant is ordinarily * * * one which the trial court can resolve based on common experience and logic."State v. Lyles (1989), 42 Ohio St.3d 98, 99.
 {¶ 48} In the instant matter, the trial court determined that the proffered exhibit was not admissible because it was not relevant. We cannot conclude the trial court abused its discretion.
 {¶ 49} The documents are not relevant, and thus not admissible, to prove that the victim's fear was unreasonable or that her perception of the events was inaccurate. First, there is no logical connection between crying and fear; whether the victim never cried, or cried excessively, is irrelevant to whether she was in fear. Further, the victim's "crying spells" in no way indicate that she could not correctly perceive reality. Dr. Schwartz diagnosed the victim with depression, and she specifically noted, "[t] here is no evidence of a thoughtdisorder." As such, the documents are not relevant to demonstrate that the victim's fear was unreasonable or to discredit the victim's perception of the events that occurred. As such, the trial court did not abuse its discretion by barring these documents from admission for these purposes.
 {¶ 50} The trial court also correctly determined that the documents were not admissible to demonstrate the victim lacked truthfulness and to impeach her credibility. At trial, the victim testified:
 {¶ 51} "Q: * * * Were you at the time having difficulties at home?
 {¶ 52} "A: No.
 {¶ 53} "Q: No?
 {¶ 54} "A: Not with my husband.
 {¶ 55} "Q: With your daughter?
 {¶ 56} "A: Yes."
 {¶ 57} Appellant argues the documents should be admissible to impeach the victim's credibility because, according to appellant, the documents indicated that the victim's testimony was untruthful. Appellant contends the documents indicate that the victim was having marital problems at the time of the incident. In actuality, however, the documents indicate that the victim was having marital problems when she visited Dr. Schwartz, which was in August and September 1998. The event in question occurred nearly seven months later, on March 20, 1999. The victim's relationship with her husband in August and September 1998 has little relevance to her marital situation on March 20, 1999. As such, the documents lack probative value to demonstrate that the victim lacked truthfulness, and the trial court did not abuse its discretion by refusing to admit these documents for this purpose.
 {¶ 58} In summary, the trial court did not abuse its discretion by refusing to admit appellant's proffered Exhibit K to demonstrate that the victim's fear was unreasonable, to demonstrate that she was confused about reality, or to impeach her credibility. Appellant's second assignment of error is without merit.
 {¶ 59} In appellant's third assignment of error, he argues that the trial court deprived him of effective assistance of counsel by limiting his counsel's closing argument. Specifically, appellant contends that the trial court abused its discretion by limiting defense counsel's closing argument to thirty minutes and by giving the state time for rebuttal in addition to its thirty-minute closing argument. We disagree.
 {¶ 60} Neither the Ohio Rules of Criminal Procedure, nor the Ohio Rules of Civil Procedure, specifically address closing arguments. However, it is well-established that the time permitted for closing arguments is within the sound discretion of the trial court. State v. Ferrette (1985), 18 Ohio St.3d 106,110; State v. Jenkins (1984), 15 Ohio St.3d 164. The exercise of such discretion may "not be interfered with by a [reviewing court] in the absence of a clear showing of its abuse to the prejudice of the substantial rights of the complaining party."Jenkins at 221, quoting Braeunig v. Russell (1960),170 Ohio St. 444, 446. The only limitation upon the discretion of the trial court to limit the length of closing arguments is that the time given must be reasonable and of such length as to not impair the right of argument or deny a full and complete defense.Jenkins at 221. The Supreme Court of Ohio has also outlined five factors which should be considered when determining whether a particular time limitation on closing arguments constitutes an abuse of discretion: (1) the circumstances of the case; (2) the gravity of the offense; (3) the number of witnesses examined; (4) the volume of the evidence; and (5) the time consumed by the trial. Id.
 {¶ 61} In State v. Blumensaadt, 11th Dist. No. 2000-L-107,2002-Ohio-4317, 2001 Ohio App. LEXIS 4283, we reviewed this issue and determined that a ten-minute time limitation on closing arguments did not constitute an abuse of discretion. We observed that, pursuant to R.C. 2945.03, a trial court has the right and responsibility to control the proceedings of a criminal trial, including the length of closing arguments. Id. at 25-26, citingState v. Cornwell, 86 Ohio St.3d 360, 1999-Ohio-125. We then concluded that the trial judge did not abuse his discretion by imposing a ten-minute time limitation on closing arguments because the appellant had not demonstrated prejudice and the "facts of the case were not complicated, nor were multiple counts or issues involved." Blumensaadt at 27.
 {¶ 62} In the instant matter, the trial judge imposed his standard thirty-minute limitation on closing arguments. From the transcripts, we are unable to precisely ascertain the number of minutes consumed by each party's argument. We can only look to the number of pages consumed by each argument. This guideline is limited by our inability to ascertain the speed at which each attorney spoke.
 {¶ 63} Turning to the events at trial, the state's closing argument consumed twenty-two pages of the transcript. Appellant's defense counsel then put forth his closing argument, consuming approximately twenty-six pages of the transcript. Appellant's counsel was asked to conclude his argument, and we can presume this occurred at the thirty-minute time limit. Defense counsel then exceeded the time limitation, consuming another three pages of the transcript, before the trial court intervened and essentially told defense counsel his argument was concluded. Then, the state offered a rebuttal argument, consuming eight pages of the transcript.
 {¶ 64} In total, the state's argument, including rebuttal, consumed thirty pages of the transcript. Defense counsel's argument consumed twenty-nine pages.
 {¶ 65} Following the commencement of jury deliberations, defense counsel objected on the record to the fact that the trial court cut off his closing argument prematurely. Defense counsel stated, "* * * Your Honor, I would just like for the record object to the fact of having my argument shut off we [sic] did not get a warning earlier that there would be a limit placed on it and I left a lot out because I was saving it for the end." The trial judge replied, "[w]ell, you've been in this Court before and I've had for the 24 years that I've been on the bench a half an hour argument and in fact I gave you five minutes extra and I felt it was unfair to the State to let you go on when you had five minutes more than the State had."
 {¶ 66} Following the logic set forth in Blumensaadt andBraeunig, appellant's argument is without merit. Upon retrial following remand from this court, appellant was tried on only one offense, abduction. The facts of the matter were not complicated, and the matter did not involve multiple issues or multiple counts. The fairly short time consumed by the trial demonstrates that the court did not abuse its discretion by imposing a thirty-minute time limitation on counsel for both parties. Moreover, the trial court noted that it had actually afforded defense counsel an extra five minutes before advising him to conclude his closing argument.
 {¶ 67} As to any contention that appellant was not given any prior notification of the thirty-minute time limitation before commencing his closing argument, this is also without merit. The trial judge noted that appellant's defense counsel had appeared in his courtroom and had been subject to the thirty-minute limit on prior occasions.
 {¶ 68} Within appellant's argument, he also seems to contend that the time given for defense counsel's closing should have been the same time as the state's closing argument and rebuttal combined. He essentially argues that the state should have been given fifteen minutes for a closing argument, the defense given thirty minutes for a closing argument, and then the state given fifteen minutes for rebuttal. Any merit to this argument is without prejudice under the instant facts. Appellant had only one page less of an argument than did the state in total.
 {¶ 69} We note again that the time permitted for closing arguments is within the sound discretion of the trial court.Ferrette at 110; Jenkins. In this matter, we cannot conclude that the trial court abused its discretion or in any way prejudiced appellant. The state's arguments, including rebuttal, encompassed thirty pages of the transcript. Appellant's arguments encompassed twenty-nine pages of the transcript. While we cannot ascertain the speed at which these attorneys spoke, we can infer that the jury heard an approximately equal number of words from each party. While appellant seems to argue otherwise, the combined "time" for state's closing and rebuttal nearly equated with that given to the defense for its closing.
 {¶ 70} Accordingly, the trial court did not abuse its discretion or prejudice appellant in any way by limiting defense counsel's closing argument or by permitting the state a rebuttal argument. Appellant's third assignment of error is without merit.
 {¶ 71} In appellant's fourth assignment of error, he argues the trial court erred by denying appellant's motion for a mistrial. Specifically, appellant asserts that juror misconduct tainted the jury by lending credence to and tacitly affirming testimony of the alleged victim. We disagree.
 {¶ 72} The Sixth Amendment to the United States Constitution
mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" Beyond this, the United States Supreme Court interpreted the Due Process Clause of theFourteenth Amendment to the United States Constitution as requiring that a defendant accused of a state criminal violation be tried before a panel of fair and impartial jurors. Duncan v. Louisiana (1968), 391 U.S. 145. See, also, Section 10, Article I, Ohio Constitution, (establishing the right to "a speedy public trial by an impartial jury").
 {¶ 73} The verdict reached by a jury in a criminal trial must be based solely on the evidence and argument presented in open court. State v. Taylor (1991), 73 Ohio App.3d 827, 831, citingPatterson v. Colorado (1907), 205 U.S. 454. Outside influences must not be permitted to affect the jury's decision.
 {¶ 74} The Supreme Court of Ohio has held that a new trial may be granted for the misconduct of the jury when the substantial rights of the defendant have been materially affected. State v. Lewis (1993), 67 Ohio St.3d 200, 207; Statev. Hipkins (1982), 69 Ohio St.2d 80, 83. See, also, Crim. R. 33; R.C. 2945.79. Jury misconduct will not warrant a new trial in the absence of prejudice to the defendant. "It is a longstanding rule * * * that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." (Citations omitted.) State v. Kehn (1977),50 Ohio St.2d 11, 19.
 {¶ 75} Therefore, the analysis of a claim of jury misconduct requires a two-step inquiry. First, there must have been misconduct by a juror. Second, the court must determine whether such misconduct materially affected the substantial rights of the defendant. Taylor at 833. This court has previously held that, because the trial court is in the best position to determine the nature and extent of alleged jury misconduct, the trial court's decision on the scope of proceedings necessary to investigate the allegation is reviewed only for an abuse of discretion. State v.Sweitzer (July 14, 2000), 11th Dist. No. 98-T-0203,2000 Ohio App. LEXIS 3204, at 12-13.
 {¶ 76} Further, the decision whether to grant or deny a motion for a mistrial pursuant to Crim. R. 33 rests within the sound discretion of the trial court. State v. Glover (1988),35 Ohio St.3d 18, 19; Sage at 182. A mistrial should only be declared when justice so requires and a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118, 127.
 {¶ 77} In the instant matter, appellant's allegation of juror misconduct stems from an incident which took place during a break in the state's case-in-chief. During an afternoon recess, the court bailiff informed the trial court that the alternate juror on the panel had informed the bailiff that she had witnessed a very similar incident take place in the parking lot of the same Big Lots store and that the testimony during the course of appellant's trial triggered her memory. The bailiff immediately informed the trial court of the alternate juror's statements.
 {¶ 78} The trial court then proceeded to call the alternate juror into the courtroom during the afternoon recess for the purpose of allowing counsel for both parties to question her regarding what she had witnessed in the Big Lots parking lot and whether she had mentioned this incident to any of her fellow jurors. The alternate juror related to the trial court and counsel that she had witnessed a very similar incident, but she could not positively indicate when that incident had taken place or whether it was the very same incident for which appellant was on trial.
 {¶ 79} In response to a question posed to her by defense counsel, the alternate juror then indicated that some of the other jurors may have overheard her discussing her feelings of "déjà vu" with the bailiff in the jury room at the outset of the afternoon recess. The bailiff then verified to the trial court that the twelve jurors who actually comprised the voting panel were still in the jury room when the alternate juror made the déjà vu comment.
 {¶ 80} Following discussions with counsel for both parties, the trial court decided to bring the other twelve jurors into the courtroom and ask whether any of the individual jurors had overheard the déjà vu comment made by the alternate juror. If any of the other jurors raised their hands in the affirmative indicating that he or she had overheard the comment, it was further decided that an individual voir dire of such jurors would be conducted in chambers with counsel for both parties present. A total of four jurors raised their hands indicating that they had overheard some or all of the comments made by the alternate juror. As a result, an individual voir dire of these four jurors was conducted by the trial court and counsel.
 {¶ 81} Subsequent to the individual voir dire of these four jurors, it was agreed between the trial court and counsel for both parties that the alternate juror should be dismissed, not because she had done anything wrong or committed any real juror misconduct, but rather based upon the slim chance that she had actually witnessed the event in question given her déjà vu feeling.[3] Thus, the court dismissed the alternate juror.
 {¶ 82} Defense counsel moved for a mistrial based upon the alternate juror's statement. The trial court overruled this motion, explaining its reasons. The trial court stated, "* * * you can make your arguments on the record but I don't think there is a sufficient ground for a mistrial, I [sic] don't think these jurors are prejudiced enough to cause any sort of prejudice against your client. We don't have a handle on whether there was a detailed statement made and it appears from the statements of the jurors that a detailed statement was not made only some vague references to something similar had happened to [the alternate juror] and that she observed something and the jurors generally feel that this is not part of this case and they are not going to use it to apply in this case so I don't see a basis for a mistrial at all."
 {¶ 83} Applying the above analysis to the instant matter, it is clear that the record contains no evidence of juror misconduct. To the contrary, the alternate juror engaged in exemplary behavior by bringing the situation to the attention of the bailiff. By bringing the situation to the bailiff's attention, the alternate juror permitted the court and counsel for both parties to conduct the individual voir dire of the other four jurors to determine whether they had been influenced by the déjà vu comment. The trial court correctly noted that the alternate juror did not engage in any misconduct.
 {¶ 84} Further, assuming arguendo that there was misconduct, the record is void of any evidence that such misconduct materially affected the substantial rights of appellant. Our review of the transcript reveals that the individual voir dire of the four other jurors who overheard the alternate juror's déjà vu comment indicates that these jurors could be fair and impartial when rendering a verdict and that the comment would have no effect on their deliberations. All jurors indicated that their deliberations and verdict would be based solely on the evidence and arguments presented in open court, and they would give no weight to the alternate juror's déjà vu feeling. Accordingly, the trial court did not abuse its discretion by finding appellant's claim of juror misconduct without merit.
 {¶ 85} Further, it is apparent that the trial court exercised sound discretion when overruling defense counsel's motion for a mistrial. Based upon the voir dire of the individual jurors who overheard the alternate juror's déjà vu comment, there was no evidence suggesting that the jury's deliberations and decision making would be affected by the alternate juror's statement. A fair trial was certainly possible. Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 86} In appellant's fifth assignment of error, he argues that the trial court erred by increasing his sentence after his first appeal, retrial, and subsequent reconviction. Specifically, appellant argues that the trial court erred by re-sentencing him to a more severe sentence without explanation or justifiable reason. We disagree.
 {¶ 87} Pursuant to R.C. 2953.08, this court uses a de novo standard of review when reviewing a felony sentence. State v.Thompson, 11th Dist. No. 2001-L-222, 2002-Ohio-7151, at ¶ 7. "However, this court will not disturb a given sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law." Id., citing State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334, at 4. Finally, we note that the trial court has the "discretion to determine the most effective way to comply with the purposes and principles of sentencing," as set forth in R.C. 2929.11, when imposing a felony sentence. R.C. 2929.12(A).
 {¶ 88} Further, the due process guarantees of the United States Constitution prohibit a trial court from issuing a harsh sentence out of vindictiveness against a defendant for having pursued a successful appeal. Alabama v. Smith (1989),490 U.S. 794, 798. "In order to assure the absence of such a motivation, * * * whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for * * * doing so must affirmatively appear." Id., quoting North Carolina v. Pearce
(1969), 395 U.S. 711, 726.
 {¶ 89} A reviewing court may not presume vindictiveness if the trial court provides legitimate reasons in support of the increased sentence. Smith at 798. Similarly, when a trial court re-sentences a defendant upon remand, it may properly impose a more severe sentence if it bases the sentence on relevant facts, conduct, or events that have occurred subsequent to the original sentencing proceeding. See, e.g., Texas v. McCullough (1986),475 U.S. 134, 141, quoting Wasman v. United States (1984),468 U.S. 559, 572.
 {¶ 90} In the instant matter, appellant was originally ordered to serve a term of one year of imprisonment for his conviction for gross sexual imposition and a term of three years of imprisonment for his conviction for abduction. These sentences were to be served concurrently. Appellant argues in his appellate brief that he has already served two years and three months of the original three-year sentence, and the record reflects that this is close to accurate. Appellant entered prison about November 17, 1999, and he served until he was released on bond on January 16, 2002. He served two years and two months of his sentence. Eight months of imprisonment remained to be served.
 {¶ 91} On remand and reconviction, appellant was re-sentenced on January 8, 2003. The trial court stated that it was suspending his sentence and placing appellant on probation for three years. The trial court also found that community control was consistent with the purposes and principles of sentencing and that appellant was amenable to a community control sanction. Accordingly, the trial court ordered appellant to serve three years of community control. The trial court also ordered that appellant serve thirty-five days in the Lake County Jail, with no credit for time already served; enter and complete the Jail Treatment Program; attend the Lake Geauga Center and follow all recommendations; attend mental health counseling weekly; attend three Alcoholics Anonymous meetings per week; have no drug or alcohol involvement during the entire period of community control and submit to random drug and alcohol screens; and maintain full-time employment.
 {¶ 92} In a January 14, 2003 judgment entry, the trial court memorialized its sentence. The court ordered that appellant be sentenced to three years of community control and other specific sanctions and conditions as previously discussed.
 {¶ 93} Appellant argues that the trial court increased his sentence. In support of this, appellant turns our attention to the court's statement at the sentencing hearing that it was suspending his original sentence and placing him on probation for three years. The court stated that appellant had nine months remaining in prison and that it suspended appellant's sentence because appellant so requested on the basis that he felt he had an alcohol problem and was willing to work on the problem. The court reiterated at the sentencing hearing that the original sentence included three years of imprisonment for abduction and one year of imprisonment for gross sexual imposition, to be served concurrently.
 {¶ 94} Appellant contends his new sentence is more severe than his original sentence and that the trial court did not justify the imposition of a greater sentence. We find no merit in this argument. Indeed, appellant was re-sentenced and ordered to serve three years of community control while appellant only had approximately nine or ten months of imprisonment remaining on his original sentence.
 {¶ 95} Despite this, we cannot conclude that three years of community control and related conditions is more severe than a requirement that appellant finish his time in prison. Accordingly, the trial court did not increase the severity of appellant's sentence upon remand and, thus, did not abuse its discretion by sentencing appellant to three years of community control upon remand. Appellant's fifth assignment of error is without merit.
 {¶ 96} In appellant's sixth assignment of error, he argues the trial court erred by denying his Crim. R. 29 motion for acquittal or, alternatively, that his conviction was against the manifest weight of the evidence. We will address each of these arguments separately, and ultimately we find no merit in either argument.
 {¶ 97} It is well-established that to preserve a right to appeal the sufficiency of the evidence upon which a conviction is based, a defendant must file a Crim. R. 29 motion for acquittal. In State v. Perry (Aug. 29, 1997), 11th Dist. No. 94-T-5165,1997 Ohio App. LEXIS 3884, at 27, we recognized that if a defendant fails to make a Crim. R. 29 motion, he waives any sufficiency of evidence argument on appeal. See, also, State v.Roe (1989), 41 Ohio St.3d 18.
 {¶ 98} Pursuant to Crim. R. 29, a "court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been prove[n] beyond a reasonable doubt." Statev. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Accordingly, a motion for judgment of acquittal under Crim. R. 29 should be granted only where the evidence is insufficient to sustain a conviction.State v. Apanovitch (1987), 33 Ohio St.3d 19, 23. Thus, an appellate court must apply the same standard in reviewing a denial of a motion for acquittal as if it were reviewing a challenge to the sufficiency of the evidence.
 {¶ 99} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Jenks at paragraph two of the syllabus.
 {¶ 100} On the other hand, when reviewing a claim that the judgment is against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App. 3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 101} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 102} To convict appellant of abduction, the state was required to prove that he knowingly, by force or threat of force, restrained the victim's liberty under circumstances that placed her in fear. R.C. 2905.02(A)(2).
 {¶ 103} As an initial matter, we note that appellant's trial counsel did not move for acquittal pursuant to Crim. R. 29 at the close of the state's case and further failed to make such a motion at the close of all evidence. Accordingly, appellant waived any error relating to the sufficiency of the evidence. See, e.g., Perry at 27; Roe at 25. Despite this, we will address the merits of appellant's arguments.
 {¶ 104} Because appellant only challenges his conviction on the grounds that the state did not provide sufficient evidence that the victim was placed in fear, we will limit our analysis to this element. Based on our review of the record, and when looking at the evidence in a light most favorable to the state, this court concludes that the state offered sufficient evidence, beyond a reasonable doubt, to support each of the elements of abduction. Further, the credibility of the witnesses, both those of the state and appellant himself, were critical issues for the jury to decide, and this court will not disturb those findings on appeal unless the testimony in question was completely lacking in credibility. State v. Namey (Oct. 6, 2000), 11th Dist. No. 99-A-0003, 2000 Ohio App. LEXIS 4652, at 6.
 {¶ 105} The record contains abundant evidence which, if believed, demonstrates that the victim was placed in fear. The victim testified that when appellant pushed her up against her car, she was in fear because she did not know what appellant was going to do to her. In addition, Amato testified that the victim appeared very upset and was crying when she arrived there shortly after the incident. Officer Baker confirmed Amato's observations when he told the jury that he saw the victim crying and visibly shaking when he responded to the service station. The fact that the victim took efforts to obtain appellant's license plate number does not eliminate the claim that, while she was fearful, she chose not to be a helpless victim when she followed appellant. This conduct should be applauded rather than looked upon skeptically. Accordingly, appellant's conviction is not against the manifest weight of the evidence, and the trial court properly denied appellant's Crim. R. 29 motion. Appellant's sixth assignment of error is without merit.
 {¶ 106} In conclusion, appellant's six assignments of error are without merit. We hereby affirm the judgment of the trial court.
Rice, J., concurs,
O'Neill, J., dissents with Dissenting Opinion.
[1] On February 20, 2003, appellant filed a motion to suspend his sentence pending appeal. The motion was denied.
[2] The record demonstrates that appellant did not file a witness or exhibit list prior to his second trial. Further, it appears as if the state was never provided a copy of appellant's proffered Exhibit K.
[3] The record indicates that the trial court did not know the details of the incident the alternate juror witnessed, and the trial court was unable to ascertain whether the alternate juror witnessed the incident in the instant matter or another incident.