[Cite as *State v. Pulido*, 2022-Ohio-433.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

  - v -

VICTOR J. PULIDO,

        Defendant-Appellant.

CASE NO. 2021-L-059

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 000948

**O P I N I O N**

Decided: February 14, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Allison S. Breneman*, P.O. Box 829, Willoughby, OH 44096 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Victor J. Pulido, appeals his multiple convictions. Appellant contends that the jury verdict is against the manifest weight of the evidence; the evidence is not legally sufficient to sustain the jury's verdict; and juror misconduct entitles him to a new trial. Finding no error, we affirm.

{¶2} In September 2020, the Lake County Grand Jury, returned a twenty-count indictment, charging appellant with five counts each of the following: kidnapping, first-degree felonies, in violation of R.C. 2905.01(A)(4); rape, first-degree felonies, in violation of R.C. 2907.02(A)(1)(b); sexual battery, second-degree felonies, in violation of R.C.

2907.03(A)(5); and gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05(A)(4). The indictment alleged that appellant committed these offenses against a single victim from the time she was five years old until the time she was ten years old.

{¶3} The matter proceeded to a three-day jury trial in March 2021. The prosecution called several witnesses, including the child victim whose testimony was taken in a room other than the courtroom and televised into the courtroom by closed circuit equipment. At the close of the state's case, the defense moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court denied. The defense did not present any witnesses and unsuccessfully renewed its motion for a judgment of acquittal.

{¶4} The jury found appellant guilty of all twenty charges. The trial court merged each of the sexual battery counts with respective rape counts for purposes of sentencing. The trial court imposed a prison sentence on each remaining count, ordered some to run concurrent and others consecutive, resulting in a stated total of three consecutive life sentences without parole plus twenty years to life in prison. The sentences imposed are not at issue on appeal.

{¶5} Appellant asserts three assignments of error. We address his first two assigned errors together, which challenge the legal sufficiency and weight of the evidence:

> [1.] The Jury found, against the manifest weight of the evidence, that the Appellant committed the acts alleged in the indictment.

> [2.] The evidence was not legally sufficient to sustain a guilty verdict.

{¶6} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541

2

Case No. 2021-L-059

(1997); *State v. Davis*, 11th Dist. Lake No. 2019-L-170, 2021-Ohio-237, ¶ 187. "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶7}    In contrast, a challenge to the manifest weight of the evidence "concerns 'the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In reviewing the manifest weight of the evidence, we must "consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences, and determine whether '"the [jury] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."'" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Settle*, 2017-Ohio-703, 86 N.E.3d 35, ¶ 51 (11th Dist.).

{¶8}    A conclusion that the jury verdict is not against the manifest weight of the evidence necessarily means it was supported by sufficient evidence. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17. Thus, the appellate court need not engage in a separate analysis of sufficiency if it determines the verdict is not against the manifest weight. *Id.*

3

{¶9} Because the trial court merged the sexual battery counts with the rape counts, appellant was not sentenced for, and therefore not convicted of, sexual battery. *See, e.g., State v. Long*, 2014-Ohio-4416, 19 N.E.3d 981, ¶ 56 (11th Dist.). Thus, we do not address the evidence as it pertains to the sexual battery offenses.

{¶10} To convict appellant of kidnapping, rape, and gross sexual imposition, the state was required to prove the following elements, and the jury find they were proven, beyond a reasonable doubt:

{¶11} Kidnapping: "No person, * * * in the case of a victim under the age of thirteen * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]" R.C. 2905.01(A)(4).

{¶12} Rape: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies: * * * The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b).

{¶13} Gross sexual imposition: "No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies: * * * The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).

{¶14} The following definitions apply to these sections of the Revised Code, pursuant to R.C. 2907.01:

4

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

(C) "Sexual activity" means sexual conduct or sexual contact, or both.

{¶15} Testimony from trial witnesses revealed the following relevant facts.

{¶16} Appellant is the victim's uncle; her mother's brother. The twenty charged offenses (five each of the four crimes defined above) occurred during five periods of time. The different periods of time correspond to the different houses the victim lived in with her mother, younger brother, and appellant. Counts 1 through 4 occurred when the victim was five to seven years old; Counts 5 through 8, when she was seven to eight years old; Counts 9 through 12, when she was eight years old; Counts 13 through 16 when she was eight to ten years old; and Counts 17 through 20 when she was ten years old.

{¶17} The victim was eleven years old at the time of her testimony. She testified what age she was when she lived at each of the five homes and appellant's conduct at each location. First, she described appellant's conduct pertaining to Counts 17 through 20, which occurred immediately before she reported his behavior to her mother. She then described appellant's conduct pertaining to Counts 1 through 4, and so on, in chronological order. The victim testified in detail as to the conduct that occurred at each home; that the conduct occurred multiple times each week, up to five days a week, at

5

each different location; how appellant would pick her up, carry her to his room, and undress her; how and where appellant touched her body; that, in addition to touching, appellant inserted his penis, mouth, and hand into her vagina; and the pain she felt when appellant did so. She testified that she did not immediately tell her mother about appellant's behavior because appellant told her not to tell anyone and she did not want her mother to be mad and yell at her.

{¶18} The victim's testimony was consistent with that of her mother, the sexual assault nurse examiner, and the investigating officers. The jury also heard expert witness testimony regarding delayed disclosure of sexual abuse by child victims.

{¶19} The nurse examiner testified that she spoke with the victim outside the presence of her mother. The victim told the nurse that appellant had been touching her "almost forever" and that it was "uncomfortable." The victim also indicated on a diagram that appellant touched under her clothes on her buttocks, breast area, and vaginal area (what she referred to as her "inappropriate parts") with his hands and his penis (his "inappropriate part"). The victim's physical exam conducted by the nurse examiner was also consistent with the history the victim reported during the exam, as well as the victim's testimony. It revealed a tear in the tissue on her posterior fourchette, located near the labia majora. The nurse examiner testified that this injury was likely caused by blunt force trauma and is indicative of penetration.

{¶20} The victim's mother testified that because she worked a lot, sometimes at night, appellant took care of her children when she was not home. Appellant would also spend time with the children outside the home, such as transporting them to school and

attending school events. When the victim disclosed appellant's behavior, consistent with the victim's testimony, she told her mother that it had been happening for a long time.

{¶21} Also introduced at trial was a recorded controlled call between appellant and the victim's mother, who was assisted by investigating officers. During the phone call, appellant admitted that he had touched the victim since she was five years old, including with his hands, mouth, and penis ("just a poke") on the victim's vaginal area.

{¶22} Although comparative DNA testing was performed on items of the victim's clothing and buccal swabs obtained from appellant, the Lake County Crime Laboratory supervisor testified that the results were not informative regarding whether appellant had engaged in sexual activity with the victim.

{¶23} On appeal, appellant contends that the jury's guilty verdicts are against the manifest weight of the evidence and supported by insufficient evidence because the child victim was the only witness to the alleged acts. Appellant contends that the victim's memory was scattered and that she needed assistance before trial to remember certain details she had disclosed to the prosecutor the year prior. Appellant also raises an issue with the victim's credibility based on alleged facts that were not elicited at trial.

{¶24} Contrary to appellant's arguments, his convictions are not against the manifest weight of the evidence. Given the testimony of the victim, her mother, the investigating officers, and the nurse examiner, as well as appellant's statements in the recorded phone call, we cannot say that the jury lost its way in finding the victim credible and appellant guilty of all counts. And, upon finding that his convictions are not against the manifest weight of the evidence, they are also necessarily supported by sufficient evidence. *See State v. Struble*, 2019-Ohio-4650, 148 N.E.3d 24, ¶ 35 (11th Dist.).

{¶25} Appellant's first and second assigned errors lack merit.

{¶26} Appellant's third and final assigned error reads:

[3.] The Trial Court erred in failing to declare a mistrial after juror misconduct.

{¶27} Appellant argues the trial court erred by denying his motion for a new trial due to juror misconduct.

{¶28} "The Sixth Amendment to the United States Constitution mandates that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]' Beyond this, the United States Supreme Court interpreted the Due Process Clause of the Fourteenth Amendment to the United States Constitution as requiring that a defendant accused of a state criminal violation be tried before a panel of fair and impartial jurors." *State v. Jaryga*, 11th Dist. Lake No. 2003-L-023, 2005-Ohio-352, ¶ 72, citing *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *see also* Article I, Section 10, Ohio Constitution (establishing the right to "a speedy public trial by an impartial jury").

{¶29} "The verdict reached by a jury in a criminal trial must be based solely on the evidence and argument presented in open court. Outside influences must not be permitted to affect the jury's decision." *Jaryga* at ¶ 73, citing *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818 (4th Dist.1991), citing *Patterson v. Colorado*, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907). Thus, a new trial may be granted on motion of the defendant due to misconduct of the jury when the substantial rights of the defendant have been materially affected. R.C. 2945.79; *see also* Crim.R. 33(A) and *Jaryga* at ¶ 74, citing *State v. Lewis*, 67 Ohio St.3d 200, 207, 616 N.E.2d 921 (1993) and *State v. Hipkins*, 69 Ohio St.2d 80, 83, 430 N.E.2d 943 (1982).

8

{¶30} "It is a long-standing rule * * * that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." (Citations omitted.) *State v. Kehn*, 50 Ohio St.2d 11, 19, 361 N.E.2d 1330 (1977). "Therefore, the analysis of a claim of jury misconduct requires a two-step inquiry. First, there must have been misconduct by a juror. Second, the court must determine whether such misconduct materially affected the substantial rights of the defendant." *Jaryga* at ¶ 75, citing *Taylor* at 833.

{¶31} "This court has previously held that, because the trial court is in the best position to determine the nature and extent of alleged jury misconduct, the trial court's decision on the scope of proceedings necessary to investigate the allegation is reviewed only for an abuse of discretion." (Citation omitted.) *Jaryga*, 2005-Ohio-352, at ¶ 75; *see also State v. Fears*, 86 Ohio St.3d 329, 337-338, 715 N.E.2d 136 (1999) (acknowledging that appellate courts are to show deference to the trial court, which is in the best position to observe the jurors) and *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 163 (acknowledging that the trial court is permitted to rely on a juror's testimony in determining his or her impartiality).

{¶32} "Further, the decision whether to grant or deny a motion for a mistrial pursuant to Crim.R. 33 rests within the sound discretion of the trial court." *Jaryga* at ¶ 76, citing *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988). "A mistrial should only be declared when justice so requires and a fair trial is no longer possible." *Jaryga* at ¶ 76, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991); *accord Conway* at ¶ 160.

{¶33} Here, the alleged juror misconduct of which appellant complains took place during a break in the state's case in chief. An assistant public defender, who was not involved in this trial, informed the court that she overheard a conversation between two jurors about the case. She heard one juror say to the other, "yeah, this is ridiculous. I don't know why they're even doing that"; she then heard one of them say, "this little girl," and "that's stupid." As the jurors turned a corner and saw the two assistant public defenders who were assigned to the case, she heard one of the jurors say, "oh, this conversation never happened, right," as he patted the other juror on the back.

{¶34} The two jurors were individually questioned by the court and counsel for both parties. Both jurors denied discussing the case. The court denied defense counsel's request to individually question the remaining jurors so as to not "taint the rest of the jurors with a suggestion that something untoward has taken place." Instead, the court asked the other twelve jurors as a group whether anyone had tried to talk to them about the case or whether they had witnessed anyone discuss the case outside of the courtroom. None of the jurors indicated that they had.

{¶35} The court found that neither of the individually questioned jurors were credible and decided they would be assigned as alternate jurors. The court denied defense counsel's request for a mistrial. The alternate jurors were allowed to remain with the jury while the case was being presented but were sequestered from the jury and from each other at the start of jury deliberations. They did not participate in reaching the verdict. After the jury returned its verdict, appellant filed a motion for new trial, which was denied.

{¶36}   Appellant argues that the trial court erred in failing to dismiss the two jurors and that their continued presence at trial tainted the integrity of the jury.  We disagree.

{¶37}   The deliberating jurors confirmed that they had not discussed the case amongst themselves and had not witnessed any discussions of the case.  There was no evidence presented that the two alternate jurors ever discussed the case with the deliberating jurors or that there was any outside influence on the jury's verdict.  Accordingly, appellant failed to show that any alleged juror misconduct substantially affected his material rights or that he was prevented from a fair trial with a verdict rendered by an impartial jury.

{¶38}   The trial court did not abuse its discretion in failing to declare a mistrial or in denying appellant's motion for new trial.

{¶39}   Appellant's third assigned error lacks merit.

{¶40}   The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.